## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE:                                              CASE NO.  00-17867

BATISTE J. GIARDINA, JR.                            SECTION "B"
    Debtor

**BATISTE J. GIARDINA, JR.**                        **ADVERSARY  NO.**
    **Plaintiff**                              **04-1141**

**Versus**

**SANDRA PARNELL, MARTI TESSIER,**
**AND THE HONORABLE REGINALD T.**
**BADEAUX, III**
    **Defendants**

### MEMORANDUM OPINION

This matter came before the court on July 28, 2004 as a hearing on the

emergency complaint of Batiste J. Giardina, Jr. ("Debtor") to enforce the discharge

injunction, nullify a judgment of contempt,  release the debtor from prison and for a

temporary restraining order.    At the emergency hearing, Ms. Parnell and Marti

Tessier, appearing both individually and as attorney for Ms. Parnell, appeared and

objected to the relief requested by the Debtor.  For the reasons expressed in the

following memorandum opinion, the court finds that (1) the civil claim of Ms.

Parnell constitutes a prepetition claim that was discharged in the Debtor's

underlying bankruptcy case upon entry of the order of discharge and (2) the

criminal proceeding is not subject to the discharge injunction.

## I. Background

The Debtor and Ms. Parnell have known each other for at least 15 years. They lived together and worked in a business together until about 1993. Ms. Parnell asserts that she and the Debtor began a business together called Speedy Auto, where she was employed. She believed that the Debtor was making appropriate payroll deductions; however, she later learned that the Debtor had incorporated the business in 1993, issued stock to himself only, and that he had failed to pay withholding taxes from her salary.

Soon thereafter, the couple split up, and each party instituted litigation against the other in state court. At least three lawsuits involving the Debtor or his business and Ms. Parnell were filed in 1999 in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana as follows:

> (1) *Speeding Auto Painting, Inc. v. Sandra Parnell*, Case No. 99-10807. Application for TRO, seeking that Ms. Parnell be restrained from interfering in the debtor's businesses, and the return of certain tools;
> (2) *Sandra Parnell v. Batice Giardina and Speedy Auto Painting, Inc.*, Case No. 99-11795. Petition for Damages alleging that Ms. Parnell is entitled to one-half the profits of the business or in the alternative for unjust enrichment;
> (3) Case No. 99-10686. A rule for a protective order filed by Ms. Parnell.

Additionally, Ms. Parnell has filed a police report with the St. Tammany Parish Sheriff's Office reporting the theft of several items of furniture from her

apartment on August 28, 1999.[1]   The police report indicates that Ms. Parnell was

told by a neighbor that the Debtor's new girlfriend had loaded Ms. Parnell's

furniture into the girlfriend's vehicle and left the area.

On December 12, 2000, the Debtor filed an individual Chapter 7 bankruptcy

petition.  In his bankruptcy schedules, on Schedule F - Creditors Holding

Unsecured Nonpriority Claims, Ms. Parnell is listed as a creditor with a disputed

claim, as follows:

| Creditors Name and Mailing Address Including Zip Code | Date Claim Was Incurred And Consideration for Claim If Claim is Subject to Setoff, So State | Amount of Claim |
|---|---|---|
| Sandra Parnell c/o Marti Tessier 1800 W. Causeway App., #115 Mandeville, LA 70471 | Lawsuit | Unknown |

On March 30, 2001 an order discharging the debtor of all dischargeable debts

was entered in his bankruptcy proceedings.  The case was closed on April 2, 2001.

Thereafter, on October 22, 2003, a judgment was entered by the state court

judge in connection with the consolidated cases 99-10807 and 99-10686.[2]   The

October 22 judgment provides that the Debtor shall return "to Sandra Parnell her

property immediately more particularly, bed, chest and dresser which this Court

---

[1]  Exhibit, Parnell 5.

[2]  Exhibit, Parnell 4.

values at $150.00, $100.00 and $100.00 respectively, three (3) antique chairs valued

at $75.00 each, washer valued at $100.00 and side by side and refrigerator valued at

$500.00." The judgment also assessed $750.00 in attorney's fees against the

Debtor, and states that if the property is not returned as ordered, a judgment in favor

of Ms. Parnell and against Debtor be entered in the amount of $1,175.00, plus

interest. Both counsel for Debtor and Ms. Parnell signed the October 22, 2003

judgment, indicating that they agreed to its content and form.

Additionally,  on July 21, 2004, a  judgment was entered in connection with

Case No. 99-10807.[3]  The July 21 judgment references the money judgment in favor

of Ms. Parnell signed Oct 22, 2003, makes it executory, and holds the Debtor in

contempt of the September 23 and October 22, 2003 orders of the court.  It

sentences the Debtor to jail for four months, however, sentence is suspended upon

payment of the October 22, 2003 money judgment, with interest and attorney's fees.

On July 22, 2004, in connection with Charge No. 2004-12335, an arrest

warrant was issued for the debtor's  arrest for theft, a bond in the amount of

$5,000.00 was set, and a hearing scheduled on September 7, 2004, in Covington,

Louisiana.[4]

---

[3]  Exhibit, Parnell 9.

[4]  Exhibit, Debtor 2.

The Debtor filed the instant complaint seeking to nullify the judgment of contempt, to release the debtor and to enforce the discharge injunction. At the conclusion of the hearing on the matter, counsel were directed to file briefs discussing the following two issues: (1) whether the claim of Ms. Parnell is a prepetition or postpetition claim; and (2) whether the pending criminal proceeding against the Debtor is barred by the discharge injunction.

**II. Applicable Law**.

Section 544 of the Bankruptcy Code provides that a discharge acts to void any judgment obtained to the extent that it is a determination of the personal liability of the debtor on a debt that has been discharged, and acts as an injunction against the commencement or continuation of any action, process or act to collect a discharged debt. The question of whether a claim is one subject to the discharge injunction turns on whether the claim is a prepetition claim as defined in 11 U.S.C. §101, that has been discharged. Under §101(5) a "claim" includes a right to payment, whether or not it is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or the right to an equitable remedy for breach of performance if the breach gives rise to a right to payment. If a right to payment is vested prior to the

commencement of the bankruptcy case, the claim is a pre-petition claim.[5]  A claim

is not rendered a post-petition claim simply because the time for payment is

triggered by an event that happens postpetition.[6]

Generally, debts arising after a bankruptcy case is commenced or where the

debtor engages in independent post-discharge conduct, are not discharged.[7] Instead,

the discharge relates to the obligations in existence at the date of the debtor's filing.

If an activity creating a debt occurs postpetition, the obligation arising from it

would not be discharged.[8]  Conversely, if the activity creating a debt occurs

prepetition, it would be discharged.    A claim that arises from or is rooted in the

pre-petition acts of the debtor, even where those claims are fixed and entered by the

court after the discharge,  are treated as prepetition claims that are discharged.[9]

Ms. Parnell asserts that her claim for conversion of property was never

scheduled by the Debtor, and therefore, the claim is not discharged.  Instead, she

---

[5]  *In re Oxford Management, Inc*., 4 F.3d 1329, 1335 n.7 (5th Cir. 1993).

[6]  *Id.*

[7]  *Matter of Rosteck, 899 F.2d 694 (7th Cir. 1990); Bush v. Taylor, 912 F.2d 989 (8th Cir. 1990); In re Miller*, 268 B.R. 826 (Bankr. N.D. Ind. 2001); *In re Clarke*, 266 B.R. 301 (Bankr. E.D. Pa. 2001); *In re Gullett*, 230 B.R. 321 (Bankr. S.D. Tex. 1999).

[8]  *In re Moffitt,* 146 B.R. 364 (Bankr. S.D.Tex. 1992).

[9]  *In re Marshall*, 273 B.R. 822 (Bankr. C.D. Cal. 2002).    For instance, the postpetition conversion of collateral has been held to give rise to a postpetition claim not subject to discharge.  *In re White*, 133 B.R. 206 (Bankr. S.D. Ind. 1990).

asserts that the claim scheduled was for a "lawsuit" and the only lawsuit pending at the time of the Debtor's bankruptcy filing was the suit seeking business profits or for unjust enrichment.  She argues further that the claim for conversion was commenced by a rule or motion in the post-petition period, and therefore constitutes a post-petition claim, not subject to the discharge.   This argument is not persuasive.

It is not contested that Ms. Parnell was a creditor listed on the Debtor's bankruptcy schedules, and that she had actual notice of the Debtor's bankruptcy proceedings.   At trial, Ms. Parnell testified that the Debtor had converted several items of her furniture in 1999, the year prior to the Debtor's bankruptcy filing.  In fact, a police report was filed by Ms. Parnell on August 30, 1999 reporting the theft.[10]  The items of property subject of the state court orders are listed on an inventory attached to the police report.[11]  The court also received into evidence a draft of a Rule for Return of Property, listing the items alleged stolen.[12]  The undated Rule was originally drafted to be filed in Case No. 99-11795, the damages lawsuit, and heard on March 22, 2000, but was not filed because of the automatic stay in the Debtor's bankruptcy.   Ms. Parnell asserts in her post-trial memorandum

---

[10]  Exhibit, Parnell 5.

[11]  Exhibit, Parnell 8.

[12]  Exhibit, Parnell 6.

that, upon further reflection, the Rule mainly concerned the return of a vehicle and

was "not filed in the correct suit number because Ms. Parnell was able to retrieve

her vehicle subsequent to the filing of the bankruptcy."   A rule for return of

property  was eventually filed in Case No. 99-10807/99-10686 on June 7, 2001.[13]

The claim for the value of converted property existed at least as of August 28,

1999, when the conversion was alleged to have occurred.  Ms. Parnell, also prior to

the bankruptcy filing, considered filing a rule for the return of the property or its

value, sometime prior to March 22, 2000, a date which also predates the Debtor's

bankruptcy filing.  The court finds that the events giving rise to the claim for the

value of the converted property arose prepetition, and therefore the damages claim

stemming from the conversion constitutes a prepetition claim.  As such, the

discharge injunction is applicable to this claim.

The court also finds that Ms. Parnell's claim was scheduled in the debtor's

bankruptcy, and that Ms. Parnell had notice of the bankruptcy proceedings.

Although Ms. Parnell argues that the debtor's schedules reflecting a "lawsuit" only

concerns the petition for damages or unjust enrichment, the court finds significant

the fact that  Ms. Parnell originally sought to file a rule for return of property in the

damages lawsuit which appears on the debtor's bankruptcy schedules.  While the

---

[13]   Exhibit, Parnell 7.

reason it remained unfiled are unclear, Ms. Parnell at least contemplated filing a rule for return of property in the scheduled lawsuit.  The argument that the rule for return of property was actually made in a different proceeding does not transform the claim into an unscheduled claim, because it could have been filed in the scheduled lawsuit.

Generally, contempt proceedings are classified as either civil or criminal, depending on their primary purpose.[14]  Orders whose purpose is to coerce compliance with a court order or to compensate another party for the contemnor's violation are considered to be civil contempt.[15]   Stated another way, civil contempt operates to vindicate the private rights of a party to litigation.[16]  The penalty assessed under a civil contempt order is meant to compensate the party or to coerce compliance with a court order for the other party's benefit.[17]  Orders that permit the debtor to avoid punishment by complying with the court's directive are considered

---

[14]  *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 565 (5th Cir. 1990).

[15]  *In re Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 612 (5th Cir. 1997); *City of Broussard v. Watkins*, 869 So.2d 962 (La. App. 3rd Cir. 2004).

[16]  *In re Maloney,* 204 B.R. 671, 674 (Bankr. E.D. N.Y. 1996); *In re Dill*, 300 B.R. 658 (Bankr. E.D. Va. 2003).

[17]  *Id. citing In re Newman*, 196 B.R. at 703.

to be civil contempt orders.[18]

Where the order's purpose is to punish a party or to vindicate the authority of the court, it is viewed as criminal contempt.[19]  Criminal contempt orders are intended to sanction offenses against public justice and to compel respect for court orders.[20]  Orders that incarcerate a party for a definite period of time, or which imposes a penalty without the opportunity to comply and cure the offense do not redress a private right and are considered criminal contempt orders.[21]  A key determinant of whether an order constitutes civil or criminal contempt is whether the penalty imposed is absolute or conditional on the contemnor's conduct.[22]

Under Fifth Circuit jurisprudence:

[c]ivil contempt is remedial; the penalty serves to enforce compliance with a court order or to compensate an injured party. Criminal contempt is punitive; the penalty serves to vindicate the

---

[18]   *Johnson & Placke v. Norris*, 874 So.2d 340 (La. App. 2nd Cir. 2004)(*citing International Union*, 512 U.S. 821, 828 (1994)); *In re Moon*, 201 B.R. 79, 84 (Bankr. S.D. N.Y. 1996), *rev'd,* 211 B.R. 483 (S.D.N.Y. 1997).

[19]   *Terrebonne,* 108 F.3d at 612.

[20]   *Maloney*, 204 B.R. at 674.

[21]   *Id.*

[22]   *Lamar Fin.*, 918 F.2d at 566.

authority of the court and does not terminate upon compliance with a court order.[23]

The court finds that the July 21, 2004 contempt order is a civil contempt order. The order imposes a penalty that is conditioned on the debtor's conduct. Additionally, the order is intended to compensate Ms. Parnell, and to coerce enforcement of a prior order. The debtor can avoid incarceration by paying the money judgment, and is not incarcerated for a fixed and absolute term. Additionally, the order is entered in a civil matter, and is brought by the creditor, and not by a public official. As such, the debt the subject of the order is one that is subject to the discharge injunction.

Whether the criminal claim for conversion is barred by the discharge injunction involves a separate issue. Criminal actions are specifically not subject to the automatic stay, and are not discharged.[24] Criminal matters may be commenced or continued after a bankruptcy case is filed, and the debtor's discharge will not prevent criminal prosecution for prepetition activity.[25] Instead, "[t]he purpose of

---

[23] *In re Stewart*, 571 F.2d 958, 963 (5th Cir. 1978); *see also Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990).

[24] 11 U.S.C. 362(b)(1).

[25] *United States v. Pepper*, 51 F.3d 469, 473-474 (5th Cir. 1995)(bankruptcy discharge lacks any effect on the district court's power to order restitution in a criminal case); *In re Fussell, 928 F.2d 712 (5th Cir. 1991); United States v. Carson*, 669 F.2d 216 (5th Cir. 1982);

bankruptcy is to protect those in financial, not moral, difficulty."[26]

The Fifth Circuit has held that a bankruptcy court may enjoin a state criminal proceeding only if the requisites of *Younger v. Harris* [27] and the Anti-Injunction Act[28] are met.[29] *Younger* permits a federal court to enjoin a state criminal prosecution only if (1) the party requesting the injunction is without adequate remedy at law; (2) the party stands to suffer "irreparable injury" that is "both great and immediate"; and (3) the threatened injury relates to his "federally protected rights . . . [and] cannot be eliminated by his defense against a single criminal prosecution."[30]  In the absence of a showing of "bad faith, harassment, or any other unusual circumstance" to justify granting equitable relief from a criminal prosecution, a federal court cannot enjoin a criminal prosecution pending in a state court. [31]  Additionally, the injunction must fall within the scope of one of the exceptions enumerated in the Anti-Injunction Act, which permits a federal court to

---

[26]   *Barnette v. Evans*, 673 F.2d 1250, 1251 (11th Cir. 1982).

[27]   401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

[28]   28 U.S.C. 2283.

[29]   *In re Fussell*, 928 F.2d 712 (5th Cir. 1991).

[30]   *Id.* at 715, *quoting Younger v. Harris*, 401 U.S. at 46.

[31]   *Younger*, 401 U.S. at 54.

enjoin a state court proceeding only where "expressly authorized by Act of

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its

judgments." Under Fifth Circuit jurisprudence,  orders for restitution in criminal

matters are not subject to discharge.[32]

In this case, there has been no showing of exceptional circumstances which

would warrant this court enjoining the criminal action pending in the state courts.

No showing of bad faith, harassment or other unusual circumstance has been

presented to support enjoining the state criminal prosecution, and the court finds

none exist.   The theft was originally reported prior to the filing of the bankruptcy

petition, and is being pursued by the independent actions of state officials.  No

showing has been made that the debtor stands to suffer an "irreparable injury" that

is both great and immediate.[33]  Other than the bare assertion that the criminal claims

are a disguised collection attempt, the debtor has not presented any evidence that

---

[32] *In re Fussell, 928 F.2d 712 (5th Cir. 1991); United States v. Carson*, 669 F.2d 216 (5th Cir. 1982); *McDonald v. Burrows*, 731 F.2d 294, 299 (5th Cir. 1984)("we have held, however, that a federal court may, as a condition of probation, require an offender to make restitution to his victim for losses caused by his offense, even though the debt occasioned by the offense has been discharged in bankruptcy."); *United States v. Pepper*, 51 F.3d 469, 473-474 (5th Cir. 1995)(bankruptcy discharge lacks any effect on the district court's power to order restitution in a criminal case).

[33] *In re Davis*, 691 F.2d 176 (3rd Cir. 1982)(cost, anxiety and inconvenience of defending oneself in criminal prosecution do not constitute irreparable injury requiring injunction of a state proceeding).

-13-

the threatened injury relates to a federally protected right.   Moreover, no showing

has been made that the injunction would fit within any of the enumerated

exceptions to the Anti-Injunction Act.

The debtor asserts that the criminal prosecution has prescribed.  This court

makes no finding on prescription, and leaves the defense of the criminal matter to

the state court.

Additionally, the court finds that the civil court judge and criminal

prosecutors enjoy judicial immunity from suit for acts taken in the course of their

official judicial and prosecutorial duties.[34]  As such, to the extent that the Debtor

requests an injunction and sanctions against Judge Badeaux, the Justice of the Peace

for the Parish of St. Tammany, the Clerk of Court for the Parish of St. Tammany

and the St. Tammany Parish Sheriff's Office, the request is denied.  Judge Badeaux,

a named defendant in the complaint, will be dismissed from this suit.

For the foregoing reasons, the court will enter an order finding that the claim

of Ms. Parnell as reflected in the July 21, 2004 order of the civil court is a claim that

has been discharged and the discharge injunction applies to the claim.  The court

---

[34] *See generally Perry v. Puckett Foundations*, 2004 WL 1749520 (Bankr. M.D. Ga. July 29, 2004).

-14-

also finds that the criminal theft charge is a criminal matter not subject to the

discharge injunction.

New Orleans, Louisiana, August 31, 2004.

Jerry A. Brown
U.S. Bankruptcy Judge